IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GARY LEE FORESHEE,

        Petitioner,            No. CIV S-03-1647 GEB EFB P

    vs.

D. L. RUNNELS, Warden,

        Respondent.       <u>FINDINGS & RECOMMENDATIONS</u>

_____/

      Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2001 judgment of conviction entered against him in the Shasta County Superior Court on charges of gross vehicular manslaughter while intoxicated, and driving under the influence of alcohol and causing great bodily injury.  He seeks relief on the grounds that: (1) his right to due process was violated by jury instruction error; (2) there was insufficient evidence to support the jury's finding that he had suffered a prior "strike" offense; and (3) his trial counsel rendered ineffective assistance.  Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

/////

/////

1

# I.      Procedural Background

On March 16, 2001, an amended information was filed in the Shasta County Superior Court charging petitioner with second degree murder, in violation of Cal. Pen. Code § 187(a) (count 1); gross vehicular manslaughter while intoxicated, in violation of Cal. Pen. Code § 191.5(a) (count 2); felony driving under the influence of alcohol or drugs and causing injury, in violation of Cal. Veh. Code § 23153A (count 3); driving under the influence with a blood alcohol content exceeding .08% and causing injury, in violation of Cal. Veh. Code § 23153(B) (count 4); misdemeanor driving with a suspended or revoked driver's license, in violation of Cal. Veh. Code § 14601.5A (count 5); misdemeanor driving under the influence of alcohol or drugs, in violation of Cal. Veh. Code § 23152A (count 6); and misdemeanor driving without a valid driver's license, in violation of Cal. Veh. Code § 23152(a).  Clerk's Transcript on Appeal (CT) at 95-97.  It was also alleged, as to counts 1, 2, 3, and 4, that petitioner had suffered a prior felony within the meaning of California's Three Strikes Law; as to count 2 that petitioner caused great bodily injury and caused injury to more than one person, in violation of Cal. Veh. Code §§ 23558 and 12022.7; and, as to count 6, that petitioner refused to complete a chemical test, in violation of Cal. Veh. Code § 23577.  *Id.* at 97-99.

Jury trial commenced on March 20, 2001.  *Id.* at 110.  On March 28, 2001, the trial court granted a prosecution motion to dismiss count 5 and a defense motion to bifurcate trial on the prior conviction allegations.  *Id.* at 142, 143.  On March 29, 2001, petitioner was found not guilty on counts 1 and 6 and guilty on counts 2, 3, 4, and 7.  *Id.* at 242- 50.  The jury found the special allegation pursuant to the Three Strikes Law to be not true and the special allegation of great bodily injury to be true.  *Id.* at 323.  On July 20, 2001, the trial court granted a prosecution motion to dismiss count 7 and sentenced petitioner to 21 years, 4 months in state prison.  Answer, Ex. A at 1.

On July 26, 2001, petitioner filed a timely notice of appeal in the California Court of Appeal for the Third Appellate District.  CT at 410-11.  Petitioner's conviction was affirmed in

2

1   its entirety in a reasoned decision dated December 24, 2002.  Answer, Ex. A.  Petitioner

2   subsequently filed a petition for review, which was summarily denied by the California Supreme

3   Court in an order dated February 25, 2002.  Answer, Ex. B.

4   **II.     Factual Background**

5          At approximately 7:15 a.m. on April 26, 2000, Catherine Colehour observed a truck

6   skidding into the parking lot of Ponderosa Pines Bar and Grill.  Reporter's Transcript on Appeal

7   (RT) at 90.  The truck hit a phone connection box and decorative boulder, and traveled about 75

8   feet before stopping.  *Id.* at 90, 93, 96.  Colehour saw petitioner "pour" himself out of the truck,

9   "scuffle" with the passenger of the truck, and walk away.  *Id.* at 92, 97.  Petitioner appeared to be

10  "very intoxicated."  *Id.* at 97.  She called 9-1-1.  *Id.* at 97.

11         Robert Allen, the owner of Ponderosa Pines Bar and Grill, heard a loud crashing noise

12  and ran to the front of the bar to see what had happened.  *Id.* at 117.  He saw two people walking

13  towards him from the pickup truck.  *Id.*  One of them was petitioner.  *Id.*  Petitioner appeared to

14  be intoxicated.  *Id.* at 118.  Petitioner apologized for the accident and stated that "he did it."  *Id.*

15  at 119.

16         At 11:25 p.m. on that same date, Charles Hinkel heard tires screeching, screaming, and

17  an explosion.  *Id.* at 128.  He ran out of his home and observed that a pickup truck had been in an

18  accident.  *Id.*  He saw the driver "slouched over" and unconscious, a female passenger in the

19  middle, and a body lying on the ground.  *Id.* at 128-30.

20         Officer Kessinger arrived at the scene shortly after the accident.  *Id.* at 179.  He observed

21  that petitioner had been driving the pickup truck.  *Id.* at 179-80.  Earlier in the evening, Officer

22  Kessinger had responded to the collision at Ponderosa Pines Bar and Grill.  *Id.* at 180.  He

23  believed that petitioner was the driver in both accidents.  *Id.*

24         Petitioner's blood was drawn at 12:40 a.m. on April 27, 2000.  *Id.* at 167-68.  His blood

25  alcohol level was 0.18 percent.  *Id.* at 176.  Petitioner's blood sample also contained an abuse

26  level of methamphetamine.  *Id.* at 152-55.

                                              3

III.    **Analysis**

    **A.  Standards for a Writ of Habeas Corpus**

       Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

       Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

       Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id*. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

       The court looks to the last reasoned state court decision as the basis for the state court judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court reaches a

1    decision on the merits but provides no reasoning to support its conclusion, a federal

2    habeas court independently reviews the record to determine whether habeas corpus relief is

3    available under section 2254(d).  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

4        **B.  Petitioner's Claims**

5            **1.  Jury Instruction Error**

6        Petitioner's first claim is that his right to due process was violated by a jury instruction

7    on "the lesser offenses of gross vehicular manslaughter."  Points and Authorities attached to

8    Petition (P&A) at 11.  The California Court of Appeal explained the background to this claim as

9    follows:

10            Defendant claims the trial court erred by misinstructing the jury
             with respect to lesser offenses to gross vehicular manslaughter.
11            The instruction at issue was given after the jury asked about how it
             should consider lesser charges if it could not agree unanimously on
12            a guilty verdict.  The instruction was a modified version of
             CALJIC No. 17.12, and it indicated a progression of lesser
13            offenses, a couple of which were described as lesser offenses to
             other lesser offenses.[1]  Before the instruction was given, defendant

14

15    ————————————————

16        [1]  As read to the jury, the full instruction provided:  "If you are not satisfied beyond a
      reasonable doubt that the defendant is guilty of the crime of which he is accused in Count 2, and
17    you unanimously so find, you may convict him of any lesser crime provided you are satisfied
      beyond a reasonable doubt that he is guilty of that crime.  [¶]  You have been provided with
18    guilty and not guilty verdict forms for the crime charged in Count 2 and lesser crimes thereto.
      They are all on that one progressive verdict form that probably goes on for three pages.  [¶] The
19    crime of gross vehicular manslaughter without alcohol is a lesser crime to that of gross vehicular
      manslaughter while intoxicated.  The crime of vehicular manslaughter while intoxicated but
20    without gross negligence is a lesser crime to gross vehicular manslaughter without alcohol.  The
      crime of vehicular manslaughter without alcohol and without gross negligence is a lesser crime
21    to vehicular manslaughter while intoxicated but without gross negligence.  The crime of driving
      under the influence causing injury is a lesser crime to that of gross vehicular manslaughter while
22    intoxicated.  The crime of driving with a blood alcohol level of 0.08 or more causing injury is a
      lesser crime to that of gross vehicular manslaughter while intoxicated.  [¶]  Thus, you are to
23    determine whether the defendant is guilty or not guilty of the crime charged in Count 2 or of any
      lesser crimes.  In doing so, you have discretion to choose the order in which you evaluate each
24    crime and consider the evidence pertaining to it.  You may find it to be productive to consider
      and reach tentative conclusions on all charges and lesser crimes before reaching any final
25    verdicts.  [¶]  Before you return any final or formal verdict, you must be guided by the following:
      [¶]  Number one, if you unanimously find a defendant guilty of the crime of which he is accused
26    in Count 2, your foreperson should sign and date the corresponding verdict form.  All other
      verdict forms as to Count 2 must be left unsigned;  [¶]  If you are unable to reach a unanimous

                                                  5

1
2
3

asked the court to amend it to specify that the enumerated offenses were simply lesser offenses to gross vehicular manslaughter. However, the trial court overruled counsel's objection. In giving the instruction, the court further emphasized the progression of the lesser offenses on the verdict form.

4
5
6
7
8

The instruction included the following language: "The crime of vehicular manslaughter while intoxicated but without gross negligence is a lesser crime to gross vehicular manslaughter with alcohol." Defendant claims the instruction was erroneous because neither of the two offenses can be considered a lesser *included* offense to the other. Indeed, each offense has a different element not shared by the other; one requires intoxication and the other requires gross negligence.

9   Answer, Ex. A at 2-4.

10        Petitioner argues that, at most, he is guilty of vehicular manslaughter while intoxicated.

11   However, he claims that because of the way the challenged instruction was worded, the jury

12   would have been forced to find him guilty of a more serious charge. Petitioner explains:

13
14
15
16
17

In short, there was considerable evidence by which the jury could have convicted petitioner of the lesser offense of vehicular manslaughter while intoxicated, but without gross negligence (§ 192.subd.(c)(3)). However, the court's version of CALJIC no. 17.12 would have prevented the jury from considering the elements of that crime. Instead the jury would have reached a dead-end in the "progression" by butting up against the instruction of gross vehicular manslaughter without alcohol and would have gone no further.

18   P&A at 18-19. Petitioner claims that the jury was forced to select a verdict that did not reflect

19   his actual culpability because it was unable to progress down the chain of lesser included

20   offenses to reach the appropriate verdict. He argues that "under the court's erroneous

21

22
23
24
25
26

verdict as to the crime of which the defendant is accused in Count 2, do not sign any verdict forms as to Count 2 and report your disagreement to the Court; [¶] Three, the Court cannot accept a guilty verdict on a lesser crime unless the jury also unanimously finds and returns a signed verdict form of not guilty as to the greater crime; [¶] Four, if you unanimously agree and find the defendant not guilty of the crime with which he is charged in Count 2 but cannot reach a unanimous agreement as to the lesser crime, your foreperson should sign and date the not guilty verdict form as to the charged crime and report your disagreement as to the lesser crimes to the Court. [¶] These same principles apply in your consideration of whether the defendant is guilty or not guilty of the crime of each – of each lesser crime."

1  instructions, the only available alternative for the jury was to convict petitioner of the greater

2  offense, of gross vehicular manslaughter while intoxicated." *Id.* at 23.

3        This claim was rejected by the California Court of Appeal on petitioner's direct appeal,

4  and by the California Supreme Court without comment on petition for review.  The California

5  Court of Appeal explained its reasoning as follows:

6          It would perhaps have been preferable, under the circumstances, to
        have simply indicated that both offenses were merely lesser

7          offenses to gross vehicular manslaughter while intoxicated.

8          But to the extent the instruction impacted the jury's consideration
        of the lesser-included offenses, reversal is not warranted unless

9          there is a reasonable probability defendant would have obtained a
        more favorable result if not for the error.  (See generally *People v.*

10         *Breverman* (1998) 19 Cal.4th 142, 149.)  Defendant attempts to
        demonstrate prejudice under this standard by arguing: "There is a

11         reasonable probability that the jury, heeding the court's
        instructions on the 'progression' of lesser crimes, went from gross

12         vehicular manslaughter while intoxicated to consideration of gross
        vehicular manslaughter without alcohol.  Because it was

13         undisputed that alcohol was involved, however, the jury would
        have been 'stuck' at that barrier, and never 'progressed' further

14         down the sequence to consider the crime of vehicular manslaughter
        while intoxicated  without gross negligence."  We disagree.

15

16         The alleged "barrier" to the jury's consideration of the instructions
        is an entirely artificial construct with no basis in the record.  Even

17         if the jury considered the lesser offenses in the order emphasized,
        there is no reason to believe it would stop and return to considering

18         a greater offense simply because it discovered that an element of
        the greater offense that was obviously proven was not necessary to

19         prove a particular lesser offense.  Accordingly, any error did not
        affect the jury's consideration of all applicable lesser offenses.

20 Answer, Ex. A at 5.

21       A challenge to jury instructions does not generally state a federal constitutional claim.

22 *See Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107,

23 119 (1982)); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir. 1983).  However, a "claim of

24 error based upon a right not specifically guaranteed by the Constitution may nonetheless form a

25 ground for federal habeas corpus relief where its impact so infects the entire trial that the

26 resulting conviction violates the defendant's right to due process."  *Hines v. Enomoto*, 658 F.2d

1    667, 672 (9th Cir. 1981) (citing *Quigg v. Crist*, 616 F.2d 1107 (9th Cir. 1980));  *See also Prantil*

2    *v. California*, 843 F.2d 314, 317 (9th Cir. 1988)  The analysis for determining whether a trial is

3    "so infected with unfairness" as to rise to the level of a due process violation is similar to the

4    analysis used in determining, under *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), whether

5    an error had "a substantial and injurious effect" on the outcome.  *See Sarausad v. Porter*, 479

6    F.3d 671, 692 (9th Cir. 2007); *Thomas v. Hubbard*, 273 F.3d 1164, 1179 (9th Cir. 2001),

7    *overruled on other grounds by Payton v. Woodford*, 299 F.3d 815, 828 n.11 (9th Cir. 2002).

8        Petitioner has failed to demonstrate that the challenged jury instruction rendered his trial

9    fundamentally unfair.  Contrary to petitioner's argument, there is no evidence the jurors believed

10   they could not consider certain offenses simply because they were listed in the instruction after

11   other offenses which did not apply to the facts of this case.  On the contrary, the jury was

12   instructed that if they found petitioner not guilty of second degree murder, they could convict

13   him on "any" lesser crime if they were satisfied that he was guilty of that crime.  The jurors were

14   also instructed that they had "discretion to choose the order in which you evaluate each crime"

15   and that they "may find it to be productive to consider and reach tentative conclusions on all

16   charges and lesser crimes before reaching any final verdicts."  This language is inconsistent with

17   petitioner's argument that the jury was precluded from even considering a particular offense if

18   the offense listed above it in the instruction was inapplicable to the facts of this case.

19       In *Beck v. Alabama*, 447 U.S. 625, 638 (1980), the United States Supreme Court held that

20   the failure to instruct on a lesser included offense in a *capital* case is constitutional error if there

21   was evidence to support the instruction.  However, the Supreme Court has not decided whether

22   this rationale also extends to non-capital cases.  *See Gilmore v. Taylor*, 508 U.S. 333, 361-62

23   (1993) (Blackmun, J., dissenting) (suggesting *Beck* is limited to capital cases); *Turner v.*

24   *Marshall*, 63 F.3d 807, 818 (9th Cir. 1995), *overruled on other grounds by Tolbert v. Page*, 182

25   F.3d 677 (9th Cir. 1999).  The Ninth Circuit, like several other circuits, has declined to extend

26   *Beck* to find constitutional error arising from the failure to instruct on a lesser included offense in

8

a non-capital case.  *See Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000); *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir.1984).  *See also Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988); *Trujillo v. Sullivan*, 815 F.2d 597, 602 (10th Cir. 1987); *Perry v. Smith*, 810 F.2d 1078, 1080 (11th Cir. 1987).

Petitioner acknowledges that there is no federal constitutional right to any particular jury instructions on lesser included offenses in a non-capital case, but he argues that the instruction given by the trial court violated his due process right to adequate instructions on his theory of defense and his Sixth Amendment right to a jury trial.  P&A at 18.  These claims are meritless. Petitioner's jury was instructed on every lesser included offense to gross vehicular manslaughter. Further, as discussed above, notwithstanding the way the offenses were listed in the supplemental jury instruction, the jurors were informed that they could convict petitioner of any of these lesser  offenses and could deliberate the offenses in any order.  Petitioner's counsel argued to the jury that petitioner could be found guilty of the lesser included offense of vehicular manslaughter while intoxicated, but without gross negligence.  RT at 280-87;  *Cf. Conde v. Henry*, 198 F.3d 734, 739-40 (9th Cir. 1999) (the trial court violated defendant's right to counsel and to present a defense by precluding his attorney from arguing his theory of the defense in closing arguments); *United States v. Unruh*, 855 F.2d 1363, 1372 (9th Cir. 1987) (failure to give a requested instruction supporting defendant's theory of the case is reversible error if the theory is supported by law and has some foundation in the evidence).  The fact that petitioner's jurors did not accept petitioner's defense does not mean that he was unable to present it.

Under the circumstances of this case, petitioner's constitutional rights were not violated by the jury instruction on lesser included offenses.  Accordingly, petitioner is not entitled to relief on this claim.

////

////

////

9

### 2. <u>Sufficiency of the Evidence</u>

Petitioner's next claim is that there was insufficient evidence that his 1990 Nevada burglary qualified as a "strike" within the meaning of California's Three Strikes Law. He argues, first, that the offense of burglary under Nevada law does not include all of the elements of burglary under California law. P&A at 29. He also argues that the trial court erred when it relied on a probation report in a California case to determine whether petitioner's Nevada conviction qualified as a "serious felony" under California law. *Id.* at 34.

The California Court of Appeal rejected petitioner's claim in this regard, reasoning as follows:

> A prior conviction in another jurisdiction qualifies as a strike if it was for an offense that: (1) is punishable by imprisonment in state prison if committed in California; and (2) includes all the elements of the particular felony as defined in Penal Code section 667.5, subdivision (c), or Penal Code section 1192.7, subdivision (c). (Pen. Code, §§ 667, subd. (d)(2), 1170.12, subd. (b)(2).) Here, the Nevada burglary conviction qualified as a strike if it involved the burglary of an inhabited dwelling, which is first degree burglary under California law. (See Pen. Code, §§ 459, 460, 1192.7, subd. (c)(18).[2] The trial court could properly consider the entire record of conviction in making this determination. (See *People v. Rodriguez* (1998) 17 Cal.4th 253, 261-262.) However, if the record did not disclose facts concerning the offense actually committed, the court was required to presume the prior conviction was for the least offense punishable under Nevada law. (*See id.* at p. 262.)
>
> To prove the strike, the People introduced several pertinent documents, including the judgment of conviction showing defendant's conviction for burglary and a transcript of the hearing at which defendant pleaded guilty to the offense. At the hearing, defendant was informed that the prosecutor would be required to prove that defendant "did willfully and unlawfully enter a certain dwelling factually that was located in Reno, Washoe County, Nevada [with] the intent to commit larceny." Defendant's plea constituted an admission of guilt to the described offense.
>
> Defendant claims the People failed to properly prove the prior strike for two reasons. First, he points out that the offense was

---

[2] Penal Code section 1192.7, subdivision (c)(18) defines as a "'serious felony' . . . [¶] . . . any burglary of the first degree."

described as entry into a dwelling with intent to commit larceny. Although this ordinarily would suffice to prove burglary under California law (see Pen. Code, § 459), defendant claims that under Nevada law, larceny requires a lesser showing with respect to the requisite intent.

Defendant's argument is not persuasive. California law requires an intent to permanently deprive the owner of his or her property or to take the property temporarily but for an unreasonable time to deprive the owner of a major part of its value or enjoyment. (*See People v. Avery* (2002) 27 Cal.4th 49, 57-58.) But Nevada law requires no less. The Nevada Supreme Court has long held that larceny requires an intent to permanently deprive the owner of his or her property. (*See Grant v. State* (Nev. 2001) 24 P.3d 761, *Harvey v. State* (Nev. 1962) 375 P.2d 225, 226.)

Second, defendant claims the trial court erred to the extent it relied on a probation report in a California case to conclude that defendant entered an occupied dwelling under California law. Although the defense expressed some reservations about the evidence, counsel failed to object when the prosecutor asked the court to take "judicial notice" of it. And though defendant now suggests that his counsel was ineffective for failing to object, we disagree because the evidence was not necessary to prove the prior strike. Accordingly, any error was not prejudicial. (*Cf. People v. Reed* (1996) 13 Cal.4th 217, 230-231 [finding no prejudicial error where inadmissible hearsay used to prove prior conviction but evidence was duplicative of valid evidence]; *see also Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694 [80 L.Ed.2d 674, 693, 698] [counsel not ineffective unless challenged conduct falls below objective standard of reasonableness and there is a reasonable probability of a different result if not for error].) We explain.

As indicated at the Nevada plea canvass, defendant's crime involved entry into a "dwelling." This description was sufficient to show the crime involved an inhabited dwelling under California law and that it was therefore first degree burglary. (*See* Pen. Code, §§ 459, 460.) For purposes of the California statute, a dwelling is inhabited if it is "currently being used for dwelling purposes, *whether occupied or not.*" (Pen. Code, § 459, italics added.) Case law confirms that "a house remains inhabited even if the burglary occurs while the residents are away for an extended period of time" if it is still being used for dwelling purposes. (*People v. Cardona* (1983) 142 Cal.App.3d 481, 483; *see also People v. Hernandez* (1992) 9 Cal.App.4th 438, 441-442 [whether the residents are currently sleeping at dwelling is not necessarily dispositive].) Nevada law likewise presupposes a dwelling is some structure occupied by a resident or tenant, i.e., that it is being used for dwelling purposes. Nevada law provides: "'*Dwelling house*' includes every building or structure which has been usually

1    *occupied by a person lodging therein at night*, and whenever it is
2    so constructed as to consist of two or more parts or rooms
     occupied or intended to be occupied, whether permanently or
3    temporarily, by different tenants separately by usually lodging
     therein at night, or for any other separate purpose, each part shall
4    be deemed a separate dwelling house of the tenant occupying it."
     (Nev. Rev. Stat., § 193.014, italics added.)  When defendant
5    admitted in Nevada that he had entered a "dwelling," we can
     assume that meant a "dwelling" as defined by Nevada law, which
6    satisfies the definition of an "inhabited dwelling" under California
     law defining first degree burglary.

7    Answer, Ex. A at 5-9.

8    A writ of habeas corpus is not available for alleged error in the application of state law.

9    *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("We have stated many times that federal habeas

10   corpus relief does not lie for errors of state law.  Today, we reemphasize that it is not the

11   province of a federal habeas court to reexamine state-court determinations on state-law

12   questions"); *Little v. Crawford,* 449 F.3d 1075, 1082 (9th Cir. 2006) (same).  *See also Beck v.*

13   *Washington,* 369 U.S. 541, 554 (1962) (the Fourteenth Amendment does not assure uniformity

14   of judicial decisions . . . [or] immunity from judicial error . . . . Were it otherwise, every alleged

15   misapplication of state law would constitute a federal constitutional question).  Further, state

16   courts "are the ultimate expositors of state law," and reviewing courts are "bound by the state's

17   construction except when it appears that its interpretation is an obvious subterfuge to evade the

18   consideration of a federal issue."  *Peltier v. Wright*, 15 F.3d 860, 862 (9th Cir. 1994) (quoting

19   *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (construing state court judgment)).  *See also*

20   *Melugin v. Hames*, 38 F.3d 1478, 1482 (9th Cir. 1994) (Construing a state criminal statute

21   challenged on constitutional grounds and noting that "we accept a state court ruling on questions

22   of state law"); *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989) (deferring to state

23   court on questions of state law in construing a state criminal statute).

24   Similarly, habeas corpus relief is unavailable for alleged errors in the interpretation or

25   application of state sentencing laws by either a state trial court or appellate court.  *Cacoperdo v.*

26   *Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("[t]he decision whether to impose sentences

1   concurrently or consecutively is a matter of state criminal procedure and is not within the

2   purview of federal habeas corpus); *Hendricks v. Zenon*, 993 F.2d 664, 674 (9th Cir. 1993).  So

3   long as a state sentence "is not based on any proscribed federal grounds such as being cruel and

4   unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violation of

5   state statutes are matters of state concern." *Makal v. State of Arizona*, 544 F.2d 1030, 1035 (9th

6   Cir. 1976).  The Ninth Circuit has specifically refused to consider on habeas review claims of

7   erroneous application of state sentencing law by state courts.  *See, e.g., Miller v. Vasquez*, 868

8   F.2d 1116 (9th Cir. 1989) (holding that whether assault with a deadly weapon qualifies as a

9   "serious felony" under California's sentence enhancement provisions is a question of state

10  sentencing law and does not state a constitutional claim).

11          The state court's conclusion that petitioner's Nevada conviction qualified as a "strike"

12  under California law did not result in a complete miscarriage of justice in this case, nor is it a

13  subterfuge to evade federal review.  Further, petitioner has not pointed to any federal court

14  decision in support of his claim that the state court erroneously sentenced him pursuant to

15  California's Three Strikes law.  *See Holgerson v. Knowles*, 309 F.3d 1200, 1201-02 (9th Cir.

16  2002) (in determining in a habeas action whether out-of-state convictions were properly

17  considered in sentencing petitioner under California's Three Strikes Law, the question is not

18  whether the California Supreme Court was correct but whether California's decision to affirm the

19  judgment of conviction was contrary to, or involved an unreasonable application of, clearly

20  established federal law).  Accordingly, the opinion of the California Court of Appeal rejecting

21  petitioner's argument in this regard is neither contrary to, nor an unreasonable application of,

22  clearly established federal law.  Federal habeas corpus relief is unavailable to overturn this state

23  court decision on a claim involving only state law.  *Estelle*, 502 U.S. at 67-68.

24                    **3.  Ineffective Assistance of Counsel**

25          Petitioner's final claim is that his trial counsel rendered ineffective assistance.

26  ////

1     The Sixth Amendment guarantees the effective assistance of counsel.  The United States

2  Supreme Court set forth the test for demonstrating ineffective assistance of counsel in *Strickland*

3  *v. Washington*, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a

4  petitioner must first show that, considering all the circumstances, counsel's performance fell

5  below an objective standard of reasonableness.  *See, Strickland*, 466 U.S. at  687-88.  After a

6  petitioner identifies the acts or omissions that are alleged not to have been the result of

7  reasonable professional judgment, the court must determine whether, in light of all the

8  circumstances, the identified acts or omissions were outside the wide range of professionally

9  competent assistance.  *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  Second, a

10  petitioner must establish that he was prejudiced by counsel's deficient performance.  *Strickland*,

11  466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

12  counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at

13  694.  A reasonable probability is "a probability sufficient to undermine confidence in the

14  outcome."  *Id.  See also Williams*, 529 U.S. at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981

15  (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was

16  deficient before examining the prejudice suffered by the defendant as a result of the alleged

17  deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

18  sufficient prejudice . . . that course should be followed."  *Pizzuto v. Arave*, 280 F.3d 949, 955

19  (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 697).

20     In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption

21  that counsel's performance falls within the 'wide range of professional assistance.'"  *Kimmelman*

22  *v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689).  There is in

23  addition a strong presumption that counsel "exercised acceptable professional judgment in all

24  significant decisions made."  *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing

25  *Strickland*, 466 U.S. at 689).  However, that deference "is predicated on counsel's performance

26  of sufficient investigation and preparation to make reasonably informed, reasonably sound

14

1    judgments." *Mayfield v. Woodford*, 270 F.3d 915, 927 (9th Cir. 2001) (en banc).

2                        **i.  Failure to Investigate**

3           Petitioner argues that his trial counsel rendered ineffective assistance because he failed to

4    properly investigate the condition of the highway where the accident occurred.  P&A at 37-39.

5    Petitioner provides evidence that, at the time of the accident, there was a small drop-off between

6    the highway and the shoulder of the road.  Pet., Exs. A-E.  Petitioner states that he "attempted to

7    steer the truck back onto the road as it drifted off, but because of the conditions of the road . . .

8    petitioner loss [sic] it and then the accident happen."  P&A at 39.  Petitioner notes that Shellene

9    Martin, a passenger in his vehicle at the time of the accident, testified that he was not driving

10   erratically or speeding.  *See* RT at 246.  Petitioner also provides evidence that highway

11   construction activities after the accident eliminated this dangerous road condition and provided

12   for a smoother transition between the road and the highway.  Pet., Exs. A - E.  Petitioner faults

13   counsel for failing to interview witnesses at the construction company.  P&A at 38.  Petitioner

14   states that he asked his trial counsel to investigate the road conditions but that counsel failed to

15   do so.  *Id.* at 37-38.

16          Petitioner has failed to demonstrate prejudice with respect to these claims.  The evidence

17   at trial demonstrated that, more than an hour after the accident, petitioner's blood alcohol content

18   was more than twice the legal limit.  Under these circumstances, evidence that highway

19   conditions made it harder to get back on the road in the event a vehicle drifted onto the shoulder

20   would not have resulted in a different verdict.  For this reason alone, trial counsel's failure, if

21   any, to investigate highway conditions did not constitute ineffective assistance.  In addition,

22   although petitioner states that "witnesses" at the construction company "were the bases of

23   important defense information," he has failed to explain how their testimony would have helped

24   his defense.  *See United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (no ineffective

25   assistance because of counsel's failure to call a witness where, among other things, there was no

26   evidence in the record that the witness would testify); *United States v. Berry*, 814 F.2d 1406,

1409 (9th Cir. 1987) (appellant failed to meet prejudice prong of ineffectiveness claim because he offered no indication of what potential witnesses would have testified to or how their testimony might have changed the outcome of the hearing).

Given petitioner's inability to establish ineffective assistance of counsel on federal habeas review, this court cannot conclude that the California courts' application of *Strickland* to the facts of this case was objectively unreasonable.  Accordingly, petitioner is not entitled to relief on this claim.

### ii.  Use of Probation Report to Prove "Strike"

Petitioner also argues that his trial counsel rendered ineffective assistance when he withdrew his objection to the trial court's use of the California probation report to demonstrate that petitioner's Nevada conviction constituted a first degree burglary under California law. However, as described above, evidence contained in the probation report was duplicative of other evidence before the trier of fact.  Accordingly, trial counsel's failure, if any, to object to the admission of the probation report did not result in prejudice.

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the

////

////

////

////

////

1   specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158

2   F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

3   DATED:   August 31, 2007.

4

5                    EDMUND F. BRENNAN
                     UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26